**Nos. 2023-3940, 23-3943, 23-3945, 23-3946, 23-3947**

# In the
# United States Court of Appeals
## for the Sixth Circuit

DIANE OWENS, et al.,

*Plaintiffs-Appellees,*

v.

FIRSTENERGY CORP., et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Southern District of Ohio (Nos. 20-cv-3785 and 20-cv-4287)
(Hon. Algenon L. Marbley)

### *AMICI CURIAE* BRIEF OF LAW PROFESSORS AND FORMER SEC OFFICIALS IN SUPPORT OF APPELLANTS FIRSTENERGY CORP. AND CERTAIN INDIVIDUAL APPELLANTS AND REVERSAL

TODD G. COSENZA
CHARLES D. CORDING
MADELEINE L. TAYER
AMANDA M. PAYNE
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY  10019-6099
(212) 728-8000

*Counsel for Amici Curiae*

 

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 23-3940

In re: FIRSTENERGY CORPORATION
Case Name: SECURITIES LITIGATION

Name of counsel: See attachment

Pursuant to 6th Cir. R. 26.1, See attachment
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

CERTIFICATE OF SERVICE

I certify that on _____ February 16, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Todd G. Cosenza

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## **Appendix**

**Name of Counsel:**

Todd G. Cosenza
Charles D. Cording
Madeleine L. Tayer
Amanda M. Payne
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000
tcosenza@willkie.com
ccording@willkie.com
mtayer@willkie.com
apayne@willkie.com

**Name of Party:**

Brian G. Cartwright
Ronald J. Colombo
Elizabeth Cosenza
Richard A. Epstein
Joseph A. Grundfest
Simon Lorne
Paul G. Mahoney
Robert B. Stebbins
Matthew Turk
Andrew N. Vollmer
Karen E. Woody

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................i

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION AND INTEREST OF AMICI CURIAE ....................................1

ARGUMENT .............................................................................7

I.    THE DISTRICT COURT'S DECISION IMPERMISSIBLY EXPANDS THE *AFFILIATED UTE* PRESUMPTION. ...........................................7

    a.    *Affiliated Ute* Should Apply Only to Cases Primarily Involving Omissions, Not to Half-Truth Cases. ...................................7

    b.    The *Basic* Presumption Is Distinct from the *Affiliated Ute* Presumption and Governs Cases Involving Half-Truths. ...................11

    c.    If Left Uncorrected, the District Court's Decision Will Result in Near-Automatic Class Certification in Cases Involving Half-Truths. ...........................................................16

II.    THE DISTRICT COURT'S DECISION IGNORES *COMCAST*'S CLASSWIDE DAMAGES REQUIREMENT ..........................................19

    a.    *Comcast*'s Requirements Have Not Been Met Here. ...................19

    b.    The Decision Below Undermines a Key Guardrail to Prevent the Certification of Improper Classes. ...............................22

CONCLUSION ...........................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abell v. Potomac Ins. Co.*,
   858 F.2d 1104 (5th Cir. 1988) ............................................................3

*Affiliated Ute Citizens v. United States*,
   406 U.S. 128 (1972)................................................................*passim*

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)................................................................*passim*

*Biechele v. Cedar Point, Inc*.,
   747 F.2d 209 (6th Cir. 1984) ............................................................19

*Burges v. Bancorpsouth, Inc*.,
   No. 3:14-CV-1564, 2017 WL 2772122 (M.D. Tenn. June 26,
   2017), *denied leave to appeal by In re BancorpSouth, Inc.*, No. 17-
   0508, 2017 WL 4125647 (6th Cir. Sept. 18, 2017) .............................18

*Chelsea Assocs. v. Rapanos*,
   527 F.2d 1266 (6th Cir. 1975) ..........................................................10

*Chudner v. TransUnion Interactive, Inc.*,
   No. 09-CV-433-ER, 2010 WL 5662966 (D. Del. Dec. 15, 2010)....................20

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................*passim*

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) ........................................................20

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021)................................................3, 11, 16, 17

*Greening v. Litton Indus. Automation Systems, Inc*.,
   53 F.3d 331, 1995 WL 94743 (6th Cir. 1995)..................................19

*Halliburton Co. v. Erica P. John Fund Inc*.,
   573 U.S. 258 (2014)................................................................14, 15

*In re Interbank Funding Corp. Sec. Litig.*,
   629 F.3d 213 (D.C. Cir. 2010) ..............................................................3

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001) ................................................................3

*Joseph v. Wiles*,
   223 F.3d 1155 (10th Cir. 2000) ...........................................................3

*Little v. First California Co.*,
   532 F.2d 1302 (9th Cir. 1976) ............................................................17

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
   No. 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018),
   *rev'd on other grounds by Ohio Pub. Emps Ret. Sys. v. Fed. Home
   Loan Mortgage Corp.*, No. 20-4082, 2023 WL 2806242 (6th Cir.
   Apr. 6, 2023) .....................................................................................20

*Puddu v. NYGG (Asia) Ltd.*,
   No. 15CV8061 (DLC), 2022 WL 2789250 (S.D.N.Y. July 15,
   2022) .................................................................................................18

*Rowe v. Maremont Corp.*,
   850 F.2d 1226 (7th Cir. 1988) ..............................................................3

*SEC v. Johnston*,
   986 F.3d 63 (1st Cir. 2021) ...................................................................8

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
   552 U.S. 148 (2008).....................................................................14, 15

*Universal Health Services, Inc. v. United States*,
   579 U.S. 176 (2016).............................................................................8

*Vervaecke v. Chiles, Heider & Co.*,
   578 F.2d 713 (8th Cir. 1978) ...............................................................3

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.
Litig.*,
   2 F.4th 1199 (9th Cir. 2021) ...........................................................3, 10

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017) .............................................................3, 10

**Statutes**

15 U.S.C. § 77k(e) ....................................................................................5

**Other Authorities**

Allen Ferrell & Andrew Roper, *Price Impact, Materiality, and Halliburton II*, 93 WASH. U.L. REV. 553, 580 (2015)..........................................2

## INTRODUCTION AND INTEREST OF AMICI CURIAE[1]

This case presents two important questions in federal securities class action practice: (1) whether the presumption of reliance articulated in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) (the "*Affiliated Ute* Presumption"), applies not just to securities fraud claims based primarily on omissions, but also to claims based on "half-truths," affirmative statements by the defendants alleged to be misleadingly incomplete; and (2) whether the district court disregarded the Supreme Court's directive in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), to engage in a "rigorous analysis" of whether Plaintiffs have identified a common damages methodology to establish damages across the putative class period. The district court's resolution of these questions failed to properly apply well-established Supreme Court precedent governing the certification of class action lawsuits and, more specifically, the certification of classes arising under the Securities Exchange Act of 1934 ("Exchange Act"), resulting in certification of an overbroad and ultimately impermissible class. Amici respectfully submit that this Court's reversal is, therefore, warranted.

---

[1] No counsel for a party authored this brief in whole or in part, and no person or entity, other than amici curiae or their counsel, contributed money to fund its preparation or submission. Amici submit this brief with a motion for leave to file, as to which Appellants consent and Appellees do not consent.

Over the last several decades, the Supreme Court has issued a series of landmark decisions governing the certification of class action lawsuits asserting claims for securities fraud under the Exchange Act. These cases are best understood as establishing two potential paths for class certification depending on the nature of the claims asserted—whether they are based primarily on misrepresentations or premised primarily on omissions.

As to omissions, the Supreme Court issued its *Affiliated Ute* decision in 1972, establishing a presumption of reliance when the case is primarily based on a defendant's nondisclosure (rather than its statements), and a special relationship exists such that the defendant had a duty of affirmative disclosure but violated that duty. 406 U.S. 128. This presumption is based on the theory that if the claims are primarily based on a *failure* to disclose, positive proof of reliance is impossible. Few subsequent Supreme Court decisions have considered the *Affiliated Ute* Presumption, since until recently, the presumption was almost never invoked.[2]

As to misrepresentations, the Supreme Court's later decision in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), established a presumption of reliance for plaintiffs in cases alleging misrepresentations (the "*Basic* Presumption"). The *Basic*

---

[2] *See* Allen Ferrell & Andrew Roper, *Price Impact, Materiality, and* Halliburton II, 93 WASH. U.L. REV. 553, 580 (2015) (noting that "prior to *Halliburton II*, plaintiffs invoked the *Affiliated Ute* presumption approximately 1% of the time in class action complaints" but plaintiffs have attempted to use it with more frequency after *Halliburton II*).

Presumption is predicated on the view that, because stock prices incorporate material public information, an investor who trades stock at the price set by the market does so in reliance on the integrity of that price. As a result, an investor's reliance on public material misrepresentations may be presumed. Subsequent cases provided much needed clarity for courts and litigants on how the *Basic* Presumption may be applied and rebutted. Generally, these cases hold that, for the *Basic* Presumption to apply, plaintiffs must demonstrate market efficiency; thereafter, defendants may rebut the presumption in a variety of ways, including by demonstrating the absence of market efficiency, the predominance of individualized issues of investor knowledge, a lack of price impact, or any other "showing that severs the link between the alleged misrepresentation and . . . the price." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1962 (2021).

Every federal appellate court to consider the issue has concluded that putative securities class action lawsuits alleging so-called "half-truths" are governed by the *Basic* Presumption, not the *Affiliated Ute* Presumption.[3] The reasoning of such

---

[3] *See, e.g.*, *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1119 (5th Cir. 1988); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199, 1208–1209 (9th Cir. 2021); *Joseph v. Wiles*, 223 F.3d 1155, 1162–1163 (10th Cir. 2000); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 220 (D.C. Cir. 2010); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 193 (3d Cir. 2001); *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 n.4 (7th Cir. 1988); *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713, 717 & n.2 (8th Cir. 1978).

decisions is sound: the practical problems of proving reliance based on a defendant's silence—what prompted the Supreme Court to adopt the *Affiliated Ute* Presumption in omissions cases—simply do not apply when the defendant has spoken, even if those statements are allegedly incomplete. The district court's contrary application of *Affiliated Ute*, virtually unprecedented, invites plaintiffs to artfully plead around the *Basic* Presumption and the highly developed and restrictive body of Supreme Court case law surrounding it. Important safeguards protecting the rights of defendants at class certification will be circumvented, and class certification will be all but a formality in securities cases.

Because of the special risks presented by class action lawsuits, the Supreme Court has been equally clear that district courts must take care in ensuring that the requirements of Federal Rule of Civil Procedure 23 are met before certifying a putative class. Under *Comcast*, before a class can be certified under Rule 23, plaintiffs must establish, through "evidentiary proof," that "damages are capable of measurement on a classwide basis," and courts must conduct a "rigorous analysis" to determine whether plaintiffs have made that showing and demonstrated that their damages case is consistent with their liability case. 569 U.S. at 34–35.

Under no plausible reading of the record were the requirements of *Comcast* met here. The district court conflated damages under the *Securities Act of 1933* (the "Securities Act"), which are established formulaically by statute, with damages

under the *Exchange Act*, which are not. *See* 15 U.S.C. § 77k(e); R. 435 (Certification Op.) at 9811–9813, 9818–9820.[4] Furthermore, Plaintiffs offered no actual damages model particularized to their theory of liability that could reliably establish damages across an approximately three-and-a-half-year class period. At best, Plaintiffs provided assurances that such a model *could* be developed, while failing to actually develop one. In sum, the district court decision is one of a number of cases that have failed to engage in the "rigorous analysis" that *Comcast* requires. Permitting class certification in such circumstances creates enormous and unjust pressure on defendants to settle large class action cases even when a class's damages may be incapable of being measured under *Comcast*.

The amici curiae are individuals with a strong interest in these issues: law professors and former officials of the U.S. Securities and Exchange Commission whose scholarship and teaching focus on the federal securities laws. Although each individual amicus may not endorse every statement made herein,[5] this brief reflects the consensus of the amici that this appeal presents important questions on the *Affiliated Ute* Presumption and the requirement for trial courts to conduct a "rigorous analysis" regarding a plaintiff's proposed classwide damages methodology, and the

---

[4] Pursuant to Sixth Circuit Rule 28(a)(1), citations to the record correspond to the Page ID number of the referenced pages.

[5] In addition, the views expressed by amici here do not necessarily reflect the views of the institutions with which they are or have been associated, whose names are included solely for purposes of identification.

district court's resolution of these issues was incorrect.  Therefore, the Court should reverse the lower court's certification of the class comprising Plaintiffs' Exchange Act claims.

In alphabetical order, amici curiae are:

- Brian G. Cartwright – Former General Counsel of the U.S. Securities and Exchange Commission from 2006 to 2009;

- Ronald J. Colombo – Professor of Law and Dean for Distance Education at the Maurice A. Deane School of Law at Hofstra University;

- Elizabeth Cosenza – Associate Professor of Law at Fordham University's Gabelli School of Business;

- Richard A. Epstein – The Laurence A. Tisch Professor of Law at the New York University School of Law, the Peter and Kirsten Bedford Senior Fellow at The Hoover Institution, and the James Parker Hall Distinguished Service Professor of Law, Emeritus, and Senior Lecturer at the University of Chicago Law School;

- The Honorable Joseph A. Grundfest – William A. Franke Professor of Law and Business, Emeritus at Stanford Law School, and Commissioner of the U.S. Securities and Exchange Commission from 1985 to 1990;

- Simon Lorne – Adjunct Professor at the University of Texas at Austin School of Law, and General Counsel of the U.S. Securities and Exchange

Commission from 1993 to 1996;

- Paul G. Mahoney – David and Mary Harrison Distinguished Professor of Law, at the University of Virginia School of Law, and Dean of the same from 2008 to 2016;

- Robert B. Stebbins – Partner at Willkie Farr & Gallagher LLP, and General Counsel of the U.S. Securities and Exchange Commission from 2017 to 2021;

- Matthew Turk – Associate Professor of Business Law & Ethics at Indiana University Kelley School of Business;

- Andrew N. Vollmer – Senior Affiliated Scholar, Mercatus Center at George Mason University; former Professor of Law, General Faculty, University of Virginia School of Law; former Deputy General Counsel of the U.S. Securities and Exchange Commission; and

- Karen E. Woody – Associate Professor of Law at Washington & Lee University School of Law.

## ARGUMENT

### I. THE DISTRICT COURT'S DECISION IMPERMISSIBLY EXPANDS THE *AFFILIATED UTE* PRESUMPTION.

#### a. *Affiliated Ute* Should Apply Only to Cases Primarily Involving Omissions, Not to Half-Truth Cases.

In *Affiliated Ute*, the Supreme Court ruled for the first time that reliance may be presumed in an alleged securities fraud case when (1) the case turns on

defendant's nondisclosure rather than its statements, and (2) a relationship exists such that defendant had a duty to disclose.  406 U.S. 128.  The *Affiliated Ute* Presumption is thus a narrow exception to Rule 10b-5's reliance requirement.  The court below, however, impermissibly expanded this presumption of reliance far beyond cases primarily based on alleged omissions (like *Affiliated Ute* itself) to this case, which is primarily based on alleged misstatements.  In granting Plaintiffs' motion for class certification, the district court held that Plaintiffs were entitled to the *Affiliated Ute* Presumption even though the 46 separate alleged statements at issue "painted an incomplete picture of the alleged truth," R. 435 at 9821, a characterization that can apply only to half-truths,[6] not omissions.

A review of the factual and procedural background of *Affiliated Ute* underscores that its presumption has no application in cases like this one.  In *Affiliated Ute*, members of the Ute Indian Tribe, who had acquired stock in a corporation that managed assets derived from tribal holdings, brought suit against a

---

[6] Half-truths are incomplete affirmative statements that are alleged to have been misleading by virtue of the information omitted by the speaker.  *See SEC v. Johnston,* 986 F.3d 63, 72 (1st Cir. 2021) (explaining that statements are half-truths if they "paint[] a materially false picture in what they say because of what they omit").  Although half-truths share the characteristics of both affirmative misrepresentations and omissions, the Supreme Court recently made clear that half-truths should be categorized as misrepresentations.  In *Universal Health Services, Inc. v. United States*, 579 U.S. 176, 188 (2016), the Supreme Court stated that "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable *misrepresentations*."  (Emphasis added).

bank and two of its managers under Section 10(b) and Rule 10b-5. 406 U.S. 128. The complaint arose out of the managers' actions in assisting Ute Indians with disposing of their stock. The managers, who owed fiduciary duties to the Tribe members and knew that the stock traded in both a primary market and resale market, devised a scheme to directly purchase stock from Ute Indians and then market it to non-Indian buyers at higher prices. *Id.* at 152. The defendants never told the plaintiffs about the resale market and its considerably higher prices—even though the bank had agreed to act as fiduciaries on the Ute Indians' behalf. *Id.* at 152–53.

The district court entered judgment for the plaintiffs. The Court of Appeals reversed, holding that there could be no recovery without proof that the plaintiffs relied upon a representation by the defendants. The Supreme Court reversed, holding that, "*[u]nder the circumstances of this case*, involving *primarily a failure to disclose*, positive proof of reliance is not a prerequisite to recovery." *Id.* at 153–54 (emphasis added) (citations omitted). In such omissions cases, in lieu of proof of reliance, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact [i.e., reliance]." *Id.*

The *Affiliated Ute* Presumption thus applies only where the case primarily involves omissions and where a fiduciary or other special relationship of trust and

confidence exists such that the defendant owes a duty of disclosure. The limited scope of the presumption is further supported by the nature of the evidentiary problem it was intended to solve: the impossibility of proving reliance on a fact that was never disclosed. As this Court explained in *Chelsea Assocs. v. Rapanos*, "[i]n the usual fraud case or case brought for misrepresentation in violation of Rule 10b-5, proof of reliance upon the misstated or false fact is required." 527 F.2d 1266, 1271 (6th Cir. 1975). However, where "the violation arises from the *non-disclosure* of a material fact, problems of proof arise because of the difficulty in proving that the plaintiff relied upon the non-existence of the fact which ultimately was shown to have been present." *Id*. (emphasis added). The *Affiliated Ute* Presumption thus "meets the conceptual difficulty of proof of reliance on a negative fact." *Id*. *See also Waggoner v. Barclays PLC*, 875 F.3d 79, 95 (2d Cir. 2017) (explaining that the rationale for a presumption "in cases like *Affiliated Ute*, in which no positive statements exist," is that if no statement exists, "reliance as a practical matter is impossible to prove" (citation omitted)); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig*., 2 F.4th 1199, 1206 (9th Cir. 2021) (emphasizing that the *Affiliated Ute* Presumption applies in "narrow" circumstances, reflecting its underlying "justification" that "reliance is impossible or impractical to prove when no positive statements were made").

Expanding the *Affiliated Ute* Presumption to cases based on half-truths—where liability is premised on misleading statements rather than complete silence in the face of a duty to disclose—defeats the rationale underlying it. Indeed, where a plaintiff identifies affirmative misstatements (as Plaintiffs did here), the above problems of proof become moot. It therefore follows that the Supreme Court intended for the *Affiliated Ute* Presumption to be narrowly applied only to cases primarily alleging omissions. As made clear from the face of Plaintiffs' complaint, this is not that case.

      b.    <u>The *Basic* Presumption Is Distinct from the *Affiliated Ute* Presumption and Governs Cases Involving Half-Truths.</u>

When it comes to presumptions of reliance in securities fraud cases, the Supreme Court has drawn a clear line between cases primarily based on omissions and those primarily based on misstatements. For cases primarily based on omissions, the *Affiliated Ute* Presumption applies (as discussed *supra* at 9–10). For cases primarily based on affirmative misstatements, the *Basic* Presumption applies. *See Goldman*, 141 S. Ct. at 1958 (noting that invoking the *Basic* Presumption requires a publicly known misrepresentation). The district court ignored this important distinction and in so doing permitted Plaintiffs to circumvent the guardrails the Supreme Court has carefully crafted in cases governed by the *Basic* Presumption.

In *Basic*, former shareholders of Basic Inc., a manufacturer of chemical refractories for the steel industry, filed a class action lawsuit against Basic alleging that it made false or misleading statements regarding merger negotiations in violation of Section 10(b) and Rule 10b-5.  485 U.S. at 226, 228.  As background, in September 1976, Basic became engaged in discussions with Combustion Engineering, Inc. about a possible merger.  *Id.*  However, over the next two years, Basic made three public statements denying that it was engaged in merger negotiations.  *Id.* at 227–28.  Then, on December 18, 1978, Basic suddenly asked the New York Stock Exchange to suspend trading in its shares and issued a press release publicly disclosing that it had been approached by another company about a possible merger.  *Id.*  Just two days later, Basic announced its approval of Combustion's tender offer for all outstanding shares.  *Id.* at 228.  The plaintiffs alleged that "they were injured by selling Basic shares at artificially depressed prices in a market affected by [Basic's] misleading statements and in reliance thereon."  *Id.*

One of the issues before the Supreme Court was whether the court below properly applied a rebuttable presumption of reliance—based on the fraud-on-the-market theory[7]—in certifying the class rather than requiring each class member to show direct reliance on Basic's affirmative statements.  The Supreme Court adopted

---

[7] The fraud-on-the-market theory holds that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations."  *Basic*, 485 U.S. at 246.

the presumption of reliance established by the lower courts, stating that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in [a stock's] market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247.

In reaching this holding, the *Basic* court considered the *Affiliated Ute* Presumption—established 16 years earlier—but did not apply it. *Basic*, 485 U.S. at 243. The Supreme Court explained that the *Affiliated Ute* Presumption was specifically crafted for situations "where a duty to disclose material information had been breached" (i.e., a case based on omissions). *Id*. But *Basic* presented an entirely different situation, in which the defendants made a series of affirmative statements that "omitted" the ongoing merger negotiations: (1) "the company knew no reason for the stock's activity and that no negotiations were under way with any company for a merger"; (2) "management is unaware of any present or pending company development that would result in the abnormally heavy trading activity and price fluctuation in company shares"; and (3) the company is "unaware of any present or pending developments which would account for the high volume of trading and price fluctuations." *Basic*, 485 U.S. at 243 n.4. Although each of these statements could be cast as half-truths, omitting the fact of the merger negotiations with Combustion,

the Supreme Court did not view the case as primarily involving omissions and thus did not apply the *Affiliated Ute* Presumption.

Instead, the Supreme Court explained that misrepresentation cases present evidentiary problems when brought as class actions (ones distinct from the lack of proof *Affiliated Ute* was designed to address in omissions cases). Specifically, the Supreme Court stated that "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones." *Basic*, 485 U.S. at 242. The Supreme Court thus adopted an entirely new presumption of reliance—the *Basic* Presumption—for cases involving misrepresentations, which (unlike the *Affiliated Ute* Presumption) would be based on the fraud-on-the-market theory and therefore require a showing of market efficiency. Later cases established that to invoke the *Basic* Presumption, the plaintiff must establish: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund Inc.*, 573 U.S. 258, 268 (2014).

Since *Basic*, courts and practitioners alike have understood *Affiliate Ute* and *Basic* as establishing two distinct presumptions governing two distinct scenarios.

The Supreme Court's articulation of how the presumptions work—as distinct presumptions—has reinforced that understanding.  For instance, in *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, the Supreme Court stated: "We have found a rebuttable presumption of reliance in two *different* circumstances.  First, if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance."  552 U.S. 148, 159 (2008) (citing *Affiliated Ute*, 406 U.S. at 153–54) (emphasis added).  "Second, under the fraud-on-the-market doctrine, reliance is presumed when the statements at issue become public.  The public information is reflected in the market price of the security.  Then it can be assumed that an investor who buys or sells stock at the market price relies upon the statement."  *Id.* (citing *Basic*, 485 U.S. at 247).

The Supreme Court further distinguished the two presumptions by setting forth important guardrails that are specific to the *Basic* Presumption only. Specifically, the Supreme Court developed an intricate and specialized body of case law defining when and how securities class action defendants can rebut the *Basic* Presumption at the class certification stage.  For example, in *Halliburton Co. v. Erica P. John Fund Inc.*, the Supreme Court reaffirmed the viability of the fraud-on-the-market presumption in the face of efforts to overturn *Basic* entirely and clarified how the *Basic* Presumption should be applied in practice.  573 U.S. 258 (2014).  The court held that plaintiffs in securities fraud class actions need not prove price impact

to first invoke the *Basic* Presumption, but that defendants must be afforded an opportunity to rebut it with evidence of a lack of price impact before class certification. *Id.* at 279. And recently, in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, the Supreme Court further clarified what it meant by "evidence of a lack of price impact," holding that, "[i]n assessing price impact at class certification, courts should be open to all probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense." 141 S. Ct. 1951, 1960–1961 (2021) ("*Goldman*"). The Supreme Court thus instructed the court below to "take into account all record evidence relevant to price impact, regardless whether that evidence overlaps with materiality or any other merits issue." *Id.* at 1961.

       c.     <u>If Left Uncorrected, the District Court's Decision Will Result in Near-Automatic Class Certification in Cases Involving Half-Truths.</u>

The Supreme Court has crafted a balanced set of rules governing class certification in securities fraud cases, which allows a plaintiff to invoke either the *Basic* Presumption *or* the rarer *Affiliated Ute* Presumption, as described above, depending on the nature of the allegations. By allowing Plaintiffs here to invoke both presumptions and ultimately benefit from the easier-to-establish *Affiliated Ute* Presumption—even though Plaintiffs primarily alleged half-truths—the district court's decision undermines the Supreme Court's carefully crafted regime. The real world consequences of this error, if allowed to stand, would be far-reaching.

The district court's decision invites artful pleading by plaintiffs in securities class actions to avoid the strictures of *Basic*. This can be easily accomplished because virtually all misrepresentations can be recast as omissions or half-truths. *See Little v. First California Co*., 532 F.2d 1302, 1304 n.4 (9th Cir. 1976) ("All misrepresentations are also nondisclosures, at least to the extent that there is a failure to disclose which facts" or implications "in the representation are not true."). For example, in *Goldman*, the plaintiffs alleged that Goldman Sachs made false and misleading generic statements about its ability to manage conflicts—such as, "We have extensive procedures and controls that are designed to identify and address conflicts of interest." 141 S. Ct. 1951, 1957 (2021). The plaintiffs alleged that the challenged statements were false or misleading because they each failed to disclose several conflicts of interest. *Id*. Because the plaintiffs alleged that the statements were misleading by virtue of what they omitted, the challenged statements could have easily been pled as half-truths. Had they done so, *Goldman* would have been treated as a case primarily involving omissions and thus entitled to the *Affiliated Ute* Presumption under the district court's logic. Hence, the decision below risks encouraging an end-run around *Basic* and the more than 35 years of case law that has followed it.

Securities plaintiffs will have every incentive to do so. When proceeding under the *Affiliated Ute* Presumption, plaintiffs do not need to show market

efficiency, an exercise that can be time-consuming and costly, as it nearly always involves the retention of an expert. Even more significantly, it would be very difficult for defendants to defeat class certification in cases invoking the *Affiliated Ute* Presumption. Because of the lack of precedent, it remains uncertain what, if anything, plaintiffs need to prove in order to invoke the presumption, and then what, if anything, defendants can prove to rebut the presumption.

In practice, plaintiffs often make the argument (which at least some courts have credited) that so long as the omission of material facts is pled, the *Affiliated Ute* Presumption applies. *See Burges v. Bancorpsouth, Inc*., No. 3:14-CV-1564, 2017 WL 2772122, at *10 (M.D. Tenn. June 26, 2017) (applying the *Affiliated Ute* Presumption at the class certification stage because plaintiffs had pled materiality), *denied leave to appeal by In re BancorpSouth, Inc.*, No. 17-0508, 2017 WL 4125647 (6th Cir. Sept. 18, 2017). In fact, that is exactly what happened here. *See* R. 435 (Certification Op.) at 9814, 9822 (crediting plaintiffs' pleading of materiality). Tellingly, some courts have also held that unlike the *Basic* Presumption, the *Affiliated Ute* Presumption cannot be rebutted by a showing of lack of price impact. *See, e.g., Puddu v. NYGG (Asia) Ltd*., No. 15CV8061 (DLC), 2022 WL 2789250, at *2 (S.D.N.Y. July 15, 2022) ("[T]he *Affiliated Ute* presumption may not generally be rebutted by evidence regarding price impact, because *Affiliated Ute* does not infer reliance from a change in the share's market price[.]"). Hence, once a securities

complaint survives a motion to dismiss, class certification may be all but automatic under *Affiliated Ute*. While far from clear, defendants' only avenue for rebuttal under *Affiliated Ute* may be to show that the plaintiffs would have purchased the security even if the omitted fact had been disclosed[8]—a nearly impossible task.

## II. THE DISTRICT COURT'S DECISION IGNORES *COMCAST*'S CLASSWIDE DAMAGES REQUIREMENT

### a. *Comcast*'s Requirements Have Not Been Met Here.

To satisfy the predominance requirement at class certification for claims brought under the Exchange Act, the burden is on plaintiffs to set forth a methodology for calculating damages on a classwide basis in a manner consistent with their theories of liability. *See Comcast*, 569 U.S. at 33–35. The Supreme Court has unequivocally rejected the notion that "any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be" because that would "reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.* at 35–36.

---

[8] *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 214–15 (6th Cir. 1984) (explaining that the *Affiliated Ute* Presumption does not apply where "the defendant is able to prove that there clearly was no reliance"); *Greening v. Litton Indus. Automation Systems, Inc.*, 53 F.3d 331, 1995 WL 94743, at *2 (6th Cir. 1995) ("Although reliance may be presumed if the information is material, this [*Affiliated Ute*] presumption is rebuttable upon a showing that plaintiff's decision would have been no different had the material fact been disclosed.") (citations omitted).

Rather, plaintiffs must specifically articulate a reliable, *Daubert*-compliant methodology, and the court must conduct a "rigorous analysis" to determine whether plaintiffs have established that their "damages are capable of measurement on a classwide basis" and that their methodology is "consistent with [their] liability case." *See id.* at 33–35; *see also Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141–42 (S.D.N.Y. 2014) ("[W]ithout assurance beyond [plaintiffs' expert's] say-so, the Court cannot conclude that there is a damages model that will permit the calculation of damages on a classwide basis."); *Chudner v. TransUnion Interactive, Inc.*, No. 09-CV-433-ER, 2010 WL 5662966, at *1 n.1 (D. Del. Dec. 15, 2010) ("[A] party must provide more than an assurance to the court that it intends or plans to meet the requirements of Rule 23" (internal citations omitted).).  A "model purporting to serve as evidence of damages . . . must measure only those damages attributable to [plaintiffs'] theory [of liability].  If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible [to] measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35.

Here, the district court disregarded the Supreme Court's requirements in holding that the predominance requirement was satisfied, despite the fact that Plaintiffs' experts proposed methodologies are, in the words of one case, so "vague, indefinite, and unspecific" that they amount to "no damages model at all." *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, No. 4:08CV0160, 2018 WL

3861840, at \*19 (N.D. Ohio Aug. 14, 2018), *rev'd on other grounds by Ohio Pub. Emps Ret. Sys. v. Fed. Home Loan Mortgage Corp.*, No. 20-4082, 2023 WL 2806242 (6th Cir. Apr. 6, 2023).  One of Plaintiffs' experts (Ms. Jones) provided a report that on its face was not particularized to the facts and circumstances of this case, R. 293-8 (Jones Report) at 6397 ¶ 102; the other expert (Mr. Dalrymple) literally copied and pasted his report from another case, R. 430-2 (Dalrymple Report Redline).

The damages models produced by Plaintiffs suffered from significant limitations, including that neither expert accounted for changes in share price inflation during the class period in measuring classwide damages.  *See* R. 293-7 (Dalrymple Report) at 6304 ¶ 108; R. 293-8 (Jones Report) at 6398 ¶ 103; R. 339-3 (Dalrymple Dep. Tr.) at 7287 p. 182:1–8.  As background, the experts relied on a generic "backcasting" model, which measures inflation in the stock by assuming that the post-corrective disclosure stock price drop corresponds to the artificial inflation caused by the alleged fraud.  *See* R. 293-8 (Jones Report) at 6397–6398 ¶¶ 101–102; R. 293-7 (Dalrymple Report) at 6303 ¶¶ 103–106.  However, the class period here was unusually long (three-and-a-half years) and involved a series of events "that would arguably have affected investors' expectations" about the company's legislative and regulatory conduct at different points during that lengthy class period given Plaintiffs' theory of liability.  *See* R. 339-5 (Marietta-Westberg Report) at 7511 ¶ 103.  Hence, there inevitably would have been significant changes in inflation

throughout the class period that should have been accounted for in determining classwide damages but were not in the experts' backcasting models. *See id.* At most, the experts claimed it was possible to create such a model at a later stage in the case. *See* R. 293-7 (Dalrymple Report) at 6304 ¶ 108; *see* R. 293-8 (Jones Report) at 6398 ¶ 103. But *Comcast* requires more: an IOU is not enough. *See Comcast*, 569 U.S. at 35, 38.

The district court agreed that *Comcast* requires that any model supporting a plaintiff's damages case must be consistent with its liability case. *See* R. 435 (Certification Op.) at 9812. However, the district court's decision lacks the "rigorous analysis" required by *Comcast*, and provides little reasoning for *why* Plaintiffs actually met this standard (in fact, the district court appeared to confuse the damages calculation requirements for Securities Act claims and Exchange Act claims). The district court's decision must be reversed for these reasons.

     b.    <u>The Decision Below Undermines a Key Guardrail to Prevent the Certification of Improper Classes.</u>

*Comcast* serves as an important check at class certification, ensuring alignment between plaintiffs' theory of liability and ability to measure classwide damages. *Comcast*'s common damages methodology requirement also ensures that a certified class case will not be overwhelmed at a later stage by individualized issues of damages determinations. In contemporary practice, securities class action plaintiffs are generally incentivized to plead the longest possible class period

containing the maximum number of misstatements, then followed by as many "corrective disclosures" as possible. They do so in order to maximize their chances of survival on a motion to dismiss (or for summary judgment) and further to maximize classwide damages. But *Comcast* creates a tradeoff: the longer and more complex a class structure, and the more alleged misstatements and corrective disclosures, the more difficult it will be to establish a common damages model across the class that is particularized to plaintiffs' theory of liability. *Id.* at 35. *Comcast* thus functions as a necessary guardrail against the certification of overbroad and unworkable classes.

That essential check on plaintiffs was undermined by the decision below. If *Comcast* is satisfied by copy-and-paste expert reports that do not articulate a sufficient damages methodology for the proposed class, but only propose to do so, plaintiffs will seek certification of large, unwieldy, and ultimately impermissible investor classes. Indeed, plaintiffs will be able to get past class certification and move forward to a class trial without any cohesive basis to prove damages on a classwide basis. That is a fundamental violation of Rule 23, which was enacted to prevent the certification of classes where an element of the claim, such as damages, cannot be proven on a classwide basis. And that is contrary to what the Supreme Court intended when it issued the *Comcast* decision.

The amici respectfully submit that this Court should reverse certification of the class comprising Plaintiffs' Exchange Act claims, and reiterate the importance of (1) plaintiffs' burden under *Comcast* to demonstrate with specificity that their damages are capable of measurement on a classwide basis and that their experts' methodology actually tracks their specific theory of the case to meet their predominance requirement, and (2) a district court's obligation under *Comcast* to conduct a rigorous analysis to ensure that such requirement has been satisfied.

## CONCLUSION

For the foregoing reasons, the amici curiae believe the Court should reverse the district court's order certifying a class comprising Plaintiffs' Exchange Act claims.

Dated: New York, New York
     February 16, 2024

WILLKIE FARR & GALLAGHER LLP
By: /s/ Todd G. Cosenza
Todd G. Cosenza
Charles D. Cording
Madeleine L. Tayer
Amanda M. Payne
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
tcosenza@willkie.com
ccording@willkie.com
mtayer@willkie.com
apayne@willkie.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29 because it contains 5,704 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: New York, New York
        February 16, 2024

WILLKIE FARR & GALLAGHER LLP
By: /s/ Todd G. Cosenza
Todd G. Cosenza
Charles D. Cording
Madeleine L. Tayer
Amanda M. Payne
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
tcosenza@willkie.com
ccording@willkie.com
mtayer@willkie.com
apayne@willkie.com

*Counsel for Amici Curiae*

## CERTIFICATION OF SERVICE

I hereby certify that on this 16th day of February 2024, I caused the foregoing *Amicus Curiae* Brief of Law Professors and Former SEC Officials in Support of Appellants FirstEnergy Corp. and Certain Individual Appellants and Reversal to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Dated: New York, New York
       February 16, 2024

WILLKIE FARR & GALLAGHER LLP
By: /s/ Todd G. Cosenza
Todd G. Cosenza
Charles D. Cording
Madeleine L. Tayer
Amanda M. Payne
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
tcosenza@willkie.com
ccording@willkie.com
mtayer@willkie.com
apayne@willkie.com

*Counsel for Amici Curiae*