UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CASE NO. 23-3940

In re: FIRSTENERGY CORPORATION SECURITIES LITIGATION

-------------------------------

DIANE OWENS, et al

        Plaintiffs – Appellees

v.

FIRSTENERGY CORPORATION, et al

        Defendants-Appellants

_____

On Appeal from the United States District Court
for the Southern District of Ohio
Civil Action Nos. 2:20-cv-03785 and 2:20-cv-4287

_____

**BRIEF OF AMICUS CURIAE INTERNATIONAL ASSOCIATION OF DEFENSE COUNSEL
IN SUPPORT OF DEFENDANTS-APPELLANTS AND IN SUPPORT OF REVERSAL**

_____

Michael D. Risley
Marjorie A. Farris
Chadwick A. McTighe
Bethany A. Breetz
STITES & HARBISON, PLLC
400 W. Market Street, Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400

*Counsel for Amicus Curiae
International Association of
Defense Counsel*

## Disclosure of Corporate Affiliations
## and Financial Interest

Sixth Circuit
Case Number: 23-3940             Case Name: In re FirstEnergy Corporation
                                            Securities Litigation

Name of counsel: Michael D. Risley, Marjorie A. Farris, Chadwick A. McTighe,
Bethany A. Breetz

Pursuant to 6th Cir. R. 26.1, International Association of Defense Counsel makes
the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes,
list below the identity of the parent corporation or affiliate and the relationship
between it and the named party:

> No

2. Is there a publicly owned corporation, not a party to the appeal, that has a
financial interest in the outcome?  If yes, list the identity of such corporation and
the nature of the financial interest:

> No

Dated: February 16, 2024        /s/ Michael D Risley
                                Counsel for Amicus Curiae International
                                Association of Defense Counsel

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................ iv

RULE 29(a)(4)(D) INFORMATION ...................................................... 1

RULE 29(a)(4)(E) INFORMATION ....................................................... 2

ARGUMENT ......................................................................................... 3

    I.  THE DISTRICT COURT'S OPINION AND ORDER DEPRIVED
        DEFENDANTS OF IMPORTANT SAFEGUARDS PROVIDED BY RULE 23
        AND *COMCAST CORP. v. BEHREND*, 569 U.S. 27 (1997). ................................ 4

    II.  THE DISTRICT COURT'S OPINION AND ORDER DEPRIVED
        DEFENDANTS OF THE PROTECTIONS PROVIDED TO
        DEFENDANTS IN SECURITIES FRAUD CASES. ................................ 11

CONCLUSION ..................................................................................... 18

CERTIFICATE OF SERVICE ............................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972)......11, 13-19

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)..................................... 6

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ....... 11, 12, 17

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ...................................................... 12

*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999)............................................. 15

*Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832 (7th Cir. 1999) ........................ 5

*California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497 (2017)............ 15

*Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749 (11th Cir. 1984)......................... 16

*Comcast Corp. v. Behrend*, 569 U.S. 27 (1997) ............................................6-8, 19

*Cox v. Collins*, 7 F.3d 394 (4th Cir. 1993).......................................................15-16

*Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931 (9th Cir. 2009)........................ 17

*Freeman v. Laventhol & Horwath*, 915 F.2d 193 (6th Cir. 1990).................. 11, 12

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ..................... 12

*In re Ford Motor Co.*, 86 F.4th 723 (6th Cir. 2023) .............................................4-5

*In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3rd Cir. 2008) ....... 10

*In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213 (D.C. Cir. 2010) ......... 15

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014) ............................ 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2 F.4th 1199 (9th Cir. 2021)....................................................14-15, 17

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3rd Cir. 2001)....................... 15

*Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000).................................................. 15

*Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) ........................................ 5

*New Jersey Carpenters Health Fund v. Residential Cap., LLC*, No. 08 CV 5093 HB, 2013 WL 6839093 (S.D.N.Y. Dec. 27, 2013)................................. 9

*Regents of the Univ. of Cal. v. Credit Suisse First Boston*, 482 F.3d 372 (5th Cir. 2007) .................................................................................. 15

*Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) .................................... 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ................................5-6

**Statutes**

28 U.S.C. § 2072 .................................................................................. 5

Securities Act of 1933 ...................................................................3, 8-10

Securities Exchange Act of 1934 .........................................................3, 8-11, 19

**Other Authorities**

Federal Rule of Appellate Procedure 29(a)(4)(D) .................................................. 1

Federal Rule of Appellate Procedure 29(a)(4)(E).................................................. 2

Federal Rule of Civil Procedure 23 ...........................................................*passim*

## RULE 29(a)(4)(D) INFORMATION

Pursuant to Fed. R. App. P. 29(a)(4)(D), IADC states that it is an invitation-only, peer-reviewed membership organization of about 2,500 in-house and outside defense attorneys and insurance executives.  It is dedicated to the just and efficient administration of civil justice and improvement of the civil justice system.  IADC's interest in the case is based on this case presenting two issues that are important to IADC, its members, its members' clients, and its mission of supporting a justice system in which plaintiffs are fairly compensated for genuine injuries, responsible defendants are held liable for appropriate damages, and non-responsible defendants are exonerated without unreasonable cost.  The source of its authority to file this amicus curiae brief is the motion for leave to file this brief filed contemporaneously with this tendered brief.

## RULE 29(a)(4)(E) INFORMATION

Pursuant to Fed. R. App. P. 29(a)(4)(E), IADC states:

(i)  no party's counsel authored this brief in whole or in part;

(ii)  no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and

(iii)  no person—other than the amicus curiae—contributed money that was intended to fund preparing or submitting the brief.

## ARGUMENT

The district court certified a class under Federal Rule of Civil Procedure 23(b)(3) for defendants' alleged violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act.") Plaintiffs' claims are based on 46 alleged misrepresentations made by defendants over a 3.5 year period.  According to plaintiffs' complaint, the alleged misrepresentations allowed FirstEnergy's stock and Notes prices to remain at levels above where they would have been if defendants' alleged misrepresentations had included additional information that would have made defendants' alleged misrepresentations more accurate.

In granting plaintiffs' motion for class certification under Rule 23(b)(3), the district court fundamentally erred in applying the law and thereby failed to provide the defendants with two significant protections from liability.  First, in certifying a class on claims brought under the Exchange Act, the district court did not undertake the required rigorous analysis of whether plaintiffs had satisfied Rule 23(b)(3)'s predominance requirement.  The lack of the required rigorous analysis led the district court to the wrong result, when it held in a conclusory fashion that plaintiffs had satisfied the predominance requirement on their claims brought under the Exchange Act for the same reasons they had met the predominance requirement on their claims under the Securities Act—despite the fact that the

latter contains a damages formula while the former does not, rendering the analogy

inapt. Second, the district court improperly applied the presumption of reliance

recognized in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

to plaintiffs' claims based on alleged misrepresentations made by the defendants.

## I.   THE DISTRICT COURT'S OPINION AND ORDER DEPRIVED DEFENDANTS OF IMPORTANT SAFEGUARDS PROVIDED BY RULE 23 AND *COMCAST CORP. V. BEHREND*, 569 U.S. 27 (1997).

A class can be certified only through proof of all four elements of Federal

Rule of Civil Procedure 23(a) and at least one of the alternative provisions of Rule

23(b). Rule 23(a) states that a member of a class may sue as a representative party

**only if**: "(1) the class is so numerous that joinder of all members is impracticable:

(2) there are questions of law or fact common to the class: (3) the claims or

defenses of the representative party are typical of the claims or defenses of the

class; and (4) the representative party will fairly and adequately protect the

interests of the class." In addition, Rule 23(b)(3), the provision relied upon below,

allows the class action to proceed **if** "the court finds that the questions of law or

fact common to class members predominate over any questions affecting

individual members."

Because the class action device is such a potent one, Rule 23 serves as a

gatekeeper to class certification. *In re Ford Motor Co.*, 86 F.4th 723, 726 (6th Cir.

2023). Thus, Rule 23's stated requirements are not guidelines or suggestions. Nor

are they simply a pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, under the proper application of Rule 23, a district court cannot certify a class unless a rigorous analysis shows that all prerequisites of Rule 23 are satisfied. *See In re Ford Motor Co., supra*, 86 F.4th at 726. To make such a showing, a named plaintiff must offer "significant" evidentiary proof that they can meet all of the prerequisites. *Id.*

As a procedural rule, Rule 23 cannot be applied in a manner that would abridge, enlarge, or modify substantive rights. 28 U.S.C. § 2072. These protections embedded in the elements of Rule 23 ensure that this fundamental principle is fulfilled. Adherence to the required rigorous analysis is of crucial importance to prevent the procedural unfairness to which class actions lawsuits are uniquely susceptible. *In re Ford*, *supra*, 86 F.4th at 729.

The protections in the Rule 23 criteria must be honored and enforced not only at the merits stage but also at the class certification stage, since "a grant of class status can propel the status of a case into the stratosphere." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999). A district court's certification of a plaintiff class often places a defendant with little choice but to settle the case. *See Microsoft Corp. v. Baker*, 582 U.S. 23, 38 (2017) (commenting on the willingness of plaintiffs with weak claims to engage in certain tactics because "class certification often leads to a hefty settlement").

The protections offered by Rule 23 are particularly important when a court certifies a class under Rule 23(b)(3). Rule 23(b)(3) is an "adventuresome innovation" designed for situations "in which class-action treatment is not as clearly called for." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (1997), quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Congress therefore provided additional procedural safeguards for cases in which a class is certified under Rule 23(b)(3), including placing on a district court the specific duty to take a "close look" at whether common questions predominate over individual ones. *Comcast*, *supra*, 509 U.S. at 34.

The Court's analysis and holding in *Comcast* present defendants with appropriate protections in class actions seeking monetary damages involving Rule 23(b)(3)'s predominance requirement. In reversing a district court's certification of a plaintiff damages class under Rule 23(b)(3), the Court in *Comcast* started by recognizing that **at the class certification stage** a court must undertake a rigorous analysis of whether the movant has presented satisfactory evidentiary proof that Rule 23(b)(3)'s predominance requirement has been satisfied. *Id.* at 33. The Court faulted the district court for not undertaking that rigorous analysis, rejecting the argument that defendants' challenges to plaintiffs' damages model were more appropriate to be taken up at the merits stage than at the class certification stage. *Id.* at 34. In doing so, the Court made clear that Rule 23(b)(3) requires a rigorous

6

analysis of a plaintiffs' damages model at the class certification stage when certification is sought under Rule 23(b)(3). *Id.*

The Court was equally clear that, under the proper standard for evaluating certification, the damages model offered by plaintiffs fell "far short" of establishing that class members' damages were capable of measurement on a class-wide basis. *Id.* The damages model offered by plaintiffs was based on the testimony of a witness who designed a regression model comparing cable prices with hypothetical prices that supposedly would have prevailed but for defendants' allegedly anticompetitive conduct. *Id.* at 32. But the witness did not tie the offered model to the particular theory of liability upon which the class was certified. *Id.*[1]

As explained in *Comcast*, plaintiffs' failure to tie the offered damages model to the particular theory of liability upon which the class was certified was fatal to plaintiffs' class certification motion. At the class certification stage, any model supporting plaintiffs' damages must measure only those damages attributable to plaintiffs' liability theory. *Id.* at 35. If the offered damages model does not do

---

[1] Plaintiffs in *Comcast* initially offered four theories of liability. *Id.* at 31. The only theory upon which a class which certified was that defendants' strategy of concentrating its operation within a particular area, a practice known as "clustering," reduced the level of competition from companies that built competing cable networks in areas where an incumbent cable companies already operated. The offered damages model was not tied to that theory of liability.

7

that, "respondents cannot show Rule 23(b)(3)'s predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at 34.

*Comcast* presents appropriately strong protections in class actions in which plaintiffs seek certification under Rule 23(b)(3). Specifically, *Comcast* requires a rigorous analysis at the class certification stage, and calls for the denial of a motion for class certification under Rule 23(b)(3) if plaintiffs' damages model is not tied to the theory of liability upon which the class is certified.

Like *Comcast*, this case involves the district court certifying a damages class under Rule 23(b)(3). And like the district court in *Comcast*, the district court here did not undertake a rigorous analysis of whether Rule 23(b)(3)'s predominance requirement was met in connection with plaintiffs' motion for class certification on their claims brought under the Exchange Act. And similar to *Comcast*, the district court's failure to properly undertake the required rigorous analysis led the court to improperly grant plaintiffs' motion for class certification.

The district court recognized *Comcast* as controlling authority but only partially applied it. Specifically, the district court seemed to understand its responsibility under *Comcast* when it analyzed the predominance issue as it related to plaintiffs' claims under the Securities Act. On that issue, plaintiffs offered a damages model that was based on statutory formulas prescribed in §§ 11 and

8

12(a)(2) of the Securities Act.  *See* District Court Opinion, *14.  The district court found that a damages model based on formulas set forth in the statutes upon which defendants' liability was based satisfied Rule 23(b)(3)'s predominance requirement, agreeing with a New York district court that "[w]hile *Comcast* requires that 'any model supporting a plaintiff's damages case must be consistent with its liability case' . . . it is inapposite here, where damages reflect liability by statutory formula."  *Id.* *16, quoting *New Jersey Carpenters Health Fund v. Residential Cap., LLC*, No. 08 CV 5093 HB, 2013 WL 6839093, *5 (S.D.N.Y. Dec. 27, 2013).

The district court's failure came when it addressed certification of plaintiffs' claims brought under the Exchange Act.  Totally missing from the district court's opinion and order on that issue is analysis similar to that undertaken on plaintiffs' claims brought under the Securities Act—or any analysis, for that matter.  With regard to the claims brought under the Exchange Act, the district court simply stated that "[t]he Court concludes that predominance exists with respect to damages for the same reasons as articulated in the previous section."  *Id.* at *19. That is no analysis, much less the rigorous analysis required of the court on all issues relating to the certification of a class.

The district court's failure to provide the defendants with Rule 23's procedural protection of a rigorous analysis led the court to improperly grant

plaintiffs' motion for class certification with regard to plaintiffs' claims brought under the Exchange Act. As in *Comcast*, a rigorous analysis of the issue would have led to the inescapable conclusion that relying on a statutory formula from one statute (the Securities Act) to a different statute (the Exchange Act) that does not provide such damages formulas, is inconsistent with the requirement that plaintiffs must prove that the offered damages model is tied to their theory of liability.

Plaintiffs' failure to tie their damages model to defendants' potential liability under the Exchange Act should have resulted in the district court denying the motion seeking class certification as it related to plaintiffs' claims under the Exchange Act. If a plaintiff has not carried its burden at the class certification stage, that is the end of the inquiry; there is no provisional certification to give the plaintiff time to come up with a better damages model. *See In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 320 (3rd Cir. 2008) (explaining that the 2003 amendments to Rule 23 were designed to bring to an end the former practice of conditionally certifying a class, thereby giving plaintiffs time after class certification to fix the problems with their case). As made clear in *Comcast*, a party seeking class certification must establish at the class certification stage that all the requirements of Rule 23 have been satisfied. The district court's certification of a class with regard to plaintiffs' claims under the Exchange Act when plaintiffs did not offer a damages model tied to defendants' liability under

the Exchange Act is a return to the days of conditional certification of a class, a
practice that has not been available to a district court since 2003.  The district
court's opinion and order on this issue is a huge step backwards in the
development of class action law, sets a dangerous precedent, and should not be
allowed to stand.

## II.   THE DISTRICT COURT'S OPINION AND ORDER DEPRIVED DEFENDANTS OF THE PROTECTIONS PROVIDED TO DEFENDANTS IN SECURITIES FRAUD CASES.

The second instance of the district court not extending to the defendants the
protections to which they were entitled relates to its application of the presumption
of reliance recognized in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S.
128 (1972).  The district court erred in applying that presumption, which applies to
fraud claims primarily based on what a defendant does not say.  This case
primarily deals with what the defendants did say.

In the complaint, plaintiffs alleged defendants made 46 affirmative
misrepresentations.  Of course, reliance is an essential element of a
misrepresentation claim, as a claimant must prove that it relied upon the
misrepresentation to establish that it was injured by the misrepresentation.  *See
Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460-61 (2013).
Reliance provides the connection between an alleged misstatement and a plaintiff's
injury.  *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 197 (6th Cir. 1990).

11

The problem faced by plaintiffs when they seek class treatment of misrepresentation claims is that reliance is a particularly individualized inquiry. Thus, the reliance element of a misrepresentation claim often prevents class treatment of misrepresentation claims, since the individualized proof of reliance precludes Rule 23(b)(3)'s predominance requirement being satisfied. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, *supra*, 568 U.S. at 461-63.

Plaintiffs in securities fraud cases seek to avoid having to prove individualized reliance in one of two ways. First, the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), recognized a "fraud on the market" approach based on the premise that, in an efficient market, a security's price reflects all information available to the public. Under the fraud on the market presumption recognized in *Basic*, a buyer of a security in an efficient market is presumed to have relied on the company's public statements. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283-84 (2014).

One of the requirements that must be shown for the *Basic* fraud on the market presumption to apply is the existence of an efficient market. *Freeman v, Laventhol & Horwath*, *supra*, 915 F.2d at 193. Absent an efficient market, the relationship between the company's comments and the security's price cannot be presumed.

The second avenue around having to prove actual reliance is the one primarily applied by the district court below.  In *Affiliated Ute Citizens of Utah v. United States*, *supra*, the Supreme Court recognized the challenge plaintiffs face when their fraud claims are based on defendants not saying something when the defendants had an obligation to speak.  In *Affiliated Ute*, while the defendants were acting for a group of Ute tribe members looking to sell shares in a tribal corporation, the defendants were secretly developing a secondary market for the shares.  The defendants then induced the tribe members for whom they were ostensibly working (and to whom they owed a fiduciary duty) to sell their shares to persons with whom the defendants were secretly working, after which the shares were resold for a higher price in the secondary market. The Supreme Court found that the defendants had violated Rule 10b-5(a) and (c) with regard to their seller-clients to whom they had not made any statement concerning the secondary market.  406 U.S. at 153.

The problem faced by those sellers was that they could not show any reliance on anything the defendants had said, because the defendants had not said anything to that group of sellers.  The Court provided those sellers relief from having to prove actual reliance, holding that "under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance" was not required.  *Id.*

Here, of course, plaintiffs' claims were based on affirmative statements made by the defendants.  This is not a situation in which *Affiliated Ute*'s presumption of reliance, which was created for cases that primarily dealt with a failure to disclose, should apply.  Understandably, however, plaintiffs have tried to expand *Affiliated Ute* to cases involving alleged affirmative misrepresentations, such as in this case, because: (1) it relieves a plaintiff of having to prove actual reliance, an essential element of a fraud claim; and (2) it potentially allows for class treatment of fraud claims.  The argument often made is the one plaintiffs make here—an alleged affirmative misrepresentation should be treated as a fraudulent omission because the alleged affirmative misrepresentation would have been more accurate if additional information had been included in the affirmative representation.

IADC believes that the expansion of the *Affiliated Ute* presumption of reliance by the district court was error and represents a dangerous precedent in the erosion of the protections associated with 10b-5 claims.  While similar efforts have been made in other cases, eight Circuit Courts of Appeals have rejected attempts to expand the *Affiliated Ute* presumption of reliance to cases involving affirmative alleged misrepresentations.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2 F.4th 1199, 1204 (9th Cir. 2021) (*Affiliated Ute* presumption "should not be applied to cases that allege both misstatements and

14

omissions unless the case can be characterized as one that primarily alleges omissions."), quoting *Binder v. Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999); *Waggoner v. Barclays PLC*, 875 F.3d 79, 95 (2d Cir. 2017) (*Affiliated Ute* did not apply because "Plaintiffs' complaint is based primarily on allegations of affirmative misrepresentations, not omissions."); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 2210 (D.C. Cir. 2010) ("Radin did make express attestations, which were affirmative misrepresentations that encompassed the alleged omissions cited in the appellants' complaint.  The *Affiliated Ute* presumption is therefore inapplicable."); *Regents of the Univ. of Cal. v. Credit Suisse First Boston*, 482 F.3d 372, 384 (5th Cir. 2007) (for *Affiliated Ute* to apply, a plaintiff must "allege a case primarily based on omissions or non-disclosure"); *Johnston v. HBO Film Mgmt., Inc.,* 265 F.3d 178, 193 (3d Cir. 2001) (*Affiliated Ute* did not apply because "plaintiffs' allegations are based on misrepresentations, rather than omissions, by defendants."); *Joseph v. Wiles*, 223 F.3d 1155, 1163 (10th Cir. 2000) (*Affiliated Ute* did not apply because "[a]ny fraudulent scheme requires some degree of concealment, both of the truth and of the scheme itself," and the mere fact of this concealment cannot, and should not, transform a misrepresentation into an omission), abrogated on other grounds by *California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497 (2017); *Cox v. Collins*, 7 F.3d 394, 395-396 (4th Cir. 1993) ("Reliance on *Affiliated Ute* is misplaced.  The

*Affiliated Ute* presumption of reliance is not warranted in a Rule 10b–5 case when the plaintiff alleges both nondisclosure and positive misrepresentation instead of only nondisclosure as in *Affiliated Ute*."); *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 757 (11th Cir. 1984) (*Affiliated Ute* held inapplicable because "[t]he instant case is a mixed securities fraud case . . . involving alleged misrepresentations and omissions.").

Those cases did not deter the district court from certifying a class in this case. Rather than reaching a result consistent with those cases, the district court held that the *Affiliated Ute* presumption of reliance should be applied in this case because, as the district court put it, the "communications at issue are primarily omissions-based." District Court Opinion, *20. In so stating, the district court actually confirmed why *Affiliated Ute* should not apply—plaintiffs' claims were based on defendants' communications, not on defendants being silent when they had a duty to speak.

Indeed, plaintiffs here are trying to use defendants' affirmative statements to get around the burden they otherwise would have in a fraud by omission case to show that the defendants had a duty of disclosure. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 471 (6th Cir. 2014). Plaintiffs should not be allowed to get around the burdens they normally would have in an omission case by relying on defendants' affirmative representations, but then go back to treating the case as an

omission case when that better suits their goals. As the cases above discuss, if it is an omission case, apply the rules applicable to omission cases. If it is an affirmative misrepresentation case, apply the rules applicable to misrepresentation cases. No litigant should be allowed to jump back and forth as plaintiffs try to do here.

IADC urges this Court to recognize that the district court erred in applying the *Affiliated Ute* presumption of reliance in this case. Almost every affirmative misrepresentation can be alleged to be an incomplete misrepresentation, since any misrepresentation can be made an accurate representation if enough additional information is provided. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, *supra*, 2 F.4th at 1208. Expanding *Affiliated Ute* to such situations will render the reliance requirement meaningless in securities fraud cases. *See*, *e.g.*, *Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009) (expanding the *Affiliated Ute* presumption to affirmative alleged misrepresentations would allow the presumption to eliminate the reliance requirement almost completely).

That will particularly have a significant impact in class actions, since reliance is otherwise dealt with as a factual issue that often scuttles class certification. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, *supra*, 568 U.S. at 461-63. Once the *Affiliated Ute* presumption of reliance is applied, the

individualized reliance inquiry is removed from the case, making it a much more likely candidate for class treatment.

*Affiliated Ute* was an appropriate solution to the problem presented by claims primarily involving a failure to disclose. But as the eight other Circuits already have recognized, it should not be expanded beyond those circumstances. Here, plaintiffs' claims were based on 46 affirmative alleged misrepresentations. While conceptually those alleged misrepresentations could have included additional information, the defendants' potential liability for those statements should be based on what they said, not on what they did not say. Expanding *Affiliated Ute* beyond cases primarily involving a failure to disclose is unwarranted and deprives defendants of one of most basic, and also most significant, defenses in cases involving alleged misrepresentations—plaintiffs must prove that they were injured by defendants' conduct by showing they relied on what the defendants said. The district court erred when it deprived the defendants in this case the protection provided by the reliance requirement.

## CONCLUSION

Class action lawsuits are unique creatures, powerful weapons carrying the potential of significant financial consequences. In recognition of that fact, protections against the unfair and oppressive use of the class action device have been created in both the applicable rules, such as in Rule 23(b)(3), and in the

courts, in cases such as *Comcast Corp. v. Behrend*, 569 U.S. 27 (1997).  Those

protections are critically important, for otherwise class actions become creatures of

overwhelming power forcing defendants into settlement even when the claims at

issue may be of little or no merit.

The district court failed to properly apply the protections provided to

defendants in two significant respects.  First, in certifying a class on plaintiffs'

claims brought under the Exchange Act, the district court failed to enforce the

protections of Rule 23(b)(3)'s predominance requirement.  Plaintiffs did not offer a

damages model tied to defendants' potential liability under the Exchange Act,

which should have resulted in the denial of plaintiffs' motion seeking class

certification on their claims under the Exchange Act.  Second, the district court

improperly applied the *Affiliated Ute* presumption of reliance in this case, which

primarily concerns affirmative alleged misrepresentations, not omissions.

The district court's failure to provide those protections to the defendants in

this action should result in this case being reversed and remedied, not only for the

benefit of the defendants in this action but also to ensure that the protections

rightfully held by defendants in class action lawsuits are not eroded or lost.

Respectfully submitted,

*/s/ Michael D. Risley*
Michael D. Risley
Marjorie A. Farris
Chadwick A. McTighe
Bethany A. Breetz
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400

*Counsel for Amicus Curiae*
*International Association of Defense*
*Counsel*

## CERTIFICATE OF SERVICE

This is to certify that this Brief of Amicus Curiae has been filed on this 16th day of February, 2024, through the court's efiling system, which includes service on all registered users of that system.

*/s/ Michael D. Risley*
Michael D. Risley